IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | :    CRIMINAL NO. 4:04-CR-10 |
| v. | : |
| | :    (Judge McClure) |
| CHRISTOPHER P. DeSIVO | : |

**MEMORANDUM**

January 24, 2007

**BACKGROUND:**

On August 25, 2005, a jury in the Middle District of Pennsylvania found defendant Christopher P. DeSivo ("DeSivo") guilty of four counts related to a conspiracy to manufacture and distribute methamphetamine, possession of a firearm, witness tampering, and obstruction of justice. After the verdict, defendant has filed countless motions, including numerous motions to continue sentencing, a motion to dismiss counsel, a motion for new trial, and a motion to stay. On January 9, 2007, the court scheduled defendant's sentencing for January 24, 2007. Shortly thereafter, on January 19, 2007, defendant filed an *ex parte* motion to proceed *pro se*. The court scheduled an *ex parte* in camera hearing regarding this motion.

During the hearing, the defendant intimated to the court his intention to file his second new trial motion and brief based on newly discovered evidence, which

he had drafted.  Defense counsel noted that he reviewed defendant's papers and believed the motion had merit, but that he would need more time and that sentencing would have to be continued so that he could formally draft a brief supporting defendant's motion.  The court noted that the case is three years old and that the court has granted defendant's numerous motions continuing sentencing.  The court also noted that it generally does not consider motions filed *pro se* from defendants who have counsel.  Nevertheless, the court decided to accept the defendant's *pro se* new trial motion and brief, and if after initial review the court determined the motion had potential merit, the court would set forth a briefing schedule that would allow defense counsel and the government to weigh in.  This would require sentencing to be continued.  Otherwise, sentencing would proceed, as scheduled, for January 24, 2007.  Defendant and defense counsel had no objection to this procedure.

For the reasons set forth below, we find defendant's new trial motion totally lacks merit and will be denied.  Therefore, we will not set forth a briefing schedule, and sentencing will proceed, as scheduled, for January 24, 2007.

**DISCUSSION:**

## II.  Legal Standard

Federal Rule of Criminal Procedure 33 provides that "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  In interpreting Rule 33 motions alleging newly discovered evidence, the Third Circuit permits a district court to grant such motions when the following five requirements are met: (1) the evidence must be in fact, newly discovered, i.e. discovered since trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on, must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.  United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (internal citations omitted). "[T]he movant has a 'heavy burden' of proving each of these requirements."  Id. (internal citations omitted).   Granting a new trial motion is within the discretion of the trial court.  United States v. Console, 13 F.3d 641, 665 (3d Cir. 1993).

## II.  Defendant's New Trial Motion Lacks Merit

Defendant offers the following arguments in support of his motion for new trial: (1) apparent discrepancies in a drug lab report, which allegedly tested drugs

entered into evidence during defendant's trial, show that such evidence was tainted; (2) discrepancies arising from subpoenaed documents from the New York State Police Crime Laboratory suggest evidence entered in defendant's case was tampered; (3) subpoenaed documents from Tioga County Sheriff's Office show a chain of custody discrepancy for certain evidence admitted against defendant; (4) documents recently received by defendant show that documents presented to defendant during discovery were altered; (5) a written statement from the cell mate of government witness Ricky Johnson suggests that Ricky Johnson lied on the stand; (6) newly found evidence suggests Anne Marie DeSivo - another government witness who was married to defendant - lied on the stand and has a criminal history which the prosecution failed to disclose to defendant; and (7) newly discovered evidence suggests government witness Danielle Worthington testified in exchange for a reduced sentence for her uncle, who was in jail at the time. We will consider each argument in turn.

   *A.  Drug Lab Report*

  Defendant argues that a drug lab report he received from the Drug Enforcement Administration, which he attaches as exhibit A to his brief, demonstrates that certain evidence entered against him was tainted. Specifically, defendant argues the lab report, which he suggests tests evidence admitted against

him during trial, contains a discrepancy on page two and page five of the report regarding two drugs tested and discussed in the report. On page two of the report, exhibit no. 1 is given lab no. 156253, and is listed as cocaine. On the same page, exhibit no. 2 is given lab no. 156254 and is listed as methamphetamine. On page five, however, the lab numbers become mixed up and exhibit no. 1 is referred to as lab no. 156254, not as lab no. 156253. Defendant argues that the prosecution kept this discrepancy from the defendant and that "this information would have been invaluable to the defense." (New Trial Brief, Rec. Doc. No. 249, p. 6).

We fail to see how this discrepancy is material at all to defendant's case. The lab report was not used by the prosecutor, nor did any witness testify regarding its content. Assuming that the report does relate to evidence admitted against defendant,[1] at best the discrepancy noted by the defendant represents a mere clerical error that has no material impact on the admissibility of any evidence admitted during trial. Because this discrepancy is not material to the issues involved in this case, defendant's argument concerning this lab report fails to meet the fourth requirement for newly discovered evidence.

Even if the lab report was material, the discrepancy pointed to by the

---

[1] Defendant does not specify in his brief what piece of evidence this lab report relates to.

defendant at best would act as impeaching evidence.  In other words, the error on the lab report would go to the credibility of whether exhibit no. 1 was really cocaine and exhibit no. 2 was really methamphetamine, as stated in the report. Rule 33's third requirement, however, prevents impeachment evidence from qualifying as valid newly discovered evidence warranting a new trial.  Thus, we reject defendant's arguments regarding the drug lab report.

### B. *New York State Police Crime Laboratory Documents*

Defendant argues that discrepancies between documents he received from the New York State Police Crime Laboratory and the Tioga County Sheriff's Department suggest tampering of relevant documents to such a level that a new trial is warranted.  Defendant points to two forms, one of which he received from the New York State Police and the other he received from the Tioga County Sheriff's Department, that are each entitled as "Return to Submitting Agency." (Compare New Trial Brief, exhibit B with exhibit J, p. 1).  Defendant argues that these two forms, which apparently relate to evidence admitted against defendant during trial, are supposed to be identical, but that they are not.  Defendant notes that the time stamping on both forms are different and that one form is signed, while the other is not.  He argues that these discrepancies evince tampering of these documents.

We fail to see the significance of these alleged discrepancies.  The forms, which refer to one sealed plastic bag containing two knotted bags of a powder substance, seem to relate to the two baggies containing powder that were admitted against defendant as exhibit 2.4.  The discrepancies defendant points to, however, are too minor to have any material effect on the credibility of this evidence.  Again, even if the discrepancies were material, they would act merely as impeachment evidence, which we have already noted is not enough to warrant a new trial for newly discovered evidence.  For these reasons, we reject defendant's argument.

Defendant also argues that apparent tampering with the date and time stamp of a form entitled "Evidence Submission Form" that defendant received from the New York State Police Crime Laboratory, and the failure of the Tioga County Sheriff's Office to supply him with its original copy of its "Evidence Submission Form," evince tampering of evidence admitted against him.  Again, we fail to see the material connection between these discrepancies and any evidence admitted against defendant, and that even if the discrepancies were materially relevant, they would act only as impeachment evidence.  For these reasons, we reject defendant's arguments concerning the forms he received from the New York Police Crime Laboratory.

### C. *Chain of Custody Discrepancy*

Defendant argues that chain of custody documents concerning evidence used against him indicate evidence tampering. Specifically, defendant avers that he received from the government in March 2004 Tioga County Sheriff's Chain of Custody document, which apparently detailed the chain of custody of evidence taken from the defendant's vehicle, a black Chevy Blazer. Defendant attaches this document as exhibit D(b), and notes that there are only two entries regarding this evidence, with the latest entry being February 12, 2003. In January 2006, defendant received a chain of custody form from a civil subpoena he served on the Tioga County Sheriff's Office. Defendant alleges this form concerns the same evidence, but unlike the form disclosed to him during discovery, this form includes nine new entries. Defendant argues that from this form, "it appears someone went back and filled out the chain of custody form to make the custody appear totally accounted for when in fact it was all filled in at one time after the defendant's trial." (New Trial Brief, Rec. Doc. NO. 249-1, p. 9).

Again, we fail to see how this alleged discrepancy has any material impact on evidence admitted against defendant during trial. Furthermore, even if it did have a material impact, its impact would only be impeachment, and therefore not enough to warrant a new trial. For these reasons, we reject defendant's chain of

custody argument.

### D. Remaining Alleged Document Discrepancies

Defendant makes several other allegations of document and evidence tampering, none of which is convincing. First, defendant argues that he has compiled evidence of tampering and document alteration concerning John Pierce, the government expert who testified about methamphetamine evidence admitted against defendant. Defendant argues that Pierce testified that he tested evidence resembling a brown chunky substance, even though all of the evidentiary records in the case refer only to partial knotted bags of white powder. Defendant argues this discrepancy calls Pierce's testimony into question. Defendant states that he submitted this and other examples of tampering to the New York State Police Internal Affairs. He notes that he received a reply stating there was an investigation, but pursuant to New York state law he has been denied access to the results of the investigation. He appealed this determination, which was denied, and attaches as exhibit E documents concerning these requests and denials.

None of these documents equates to newly discovered evidence. Defendant's argument concerning the discrepancy in Pierce's testimony does not stem from evidence he found after trial. In fact, his defense counsel cross-examined Pierce concerning the brown chunky vs. white powder substance

discrepancy, which demonstrates that defendant already had an opportunity to make this argument to the jury, to no avail. See Trial Tr. vol. 6, 96-98, August 23, 2005. Further, none of the documents filed by the defendant supports his other allegations of document and evidence tampering. Without newly discovered evidence, defendant's arguments concerning Pierce are not sufficient to warrant a new trial.

Second, defendant argues, in general, that documents produced by the prosecutor were altered and tampered. (New Trial Brief, Rec. Doc. No. 249-1, p. 11). Because of these alleged alterations, defendant states that he filed a complaint with the Pennsylvania State Police Internal Affairs Division, but that the complaint was found to have no merit. Defendant attaches as exhibit F to his brief correspondence and documents related to his complaint. We fail to see how these documents would be material, and therefore reject defendant's general arguments concerning document tampering.

### E. Ricky Johnson

Defendant attaches to his brief a written statement from a Matthew Cole, who allegedly was Ricky Johnson's cell mate. The statement alleges that Johnson told Cole that he was going to testify against DeSivo, and that "the things he was going to tell the court wasn't even true." (New Trial Brief, exhibit G, Rec. Doc.

No. 249-8, p. 2). DeSivo argues that he recently found out these statements from Cole after the trial, and that Johnson's statement to Cole taints Johnson's testimony to the point that a new trial is required.

We disagree. Johnson's statement to Cole, if admitted, would have relevance only for impeaching Johnson's testimony. As we mentioned earlier, the requirements under Rule 33 do not allow impeachment evidence alone to justify a new trial when such a motion is based on newly discovered evidence. Therefore, Johnson's statement to Cole does not warrant a new trial for defendant.

### F. Anne Marie Desivo

Defendant argues that he recently received evidence indicating that Anne Marie DeSivo lied on the witness stand. Specifically, defendant states that although Anne Marie DeSivo testified to buying a rifle at a flea market at defendant's request, she stated in her statement to the New York State Police that she bought a hand gun at the flea market. Defendant, however, fails to attach Anne Marie DeSivo's police statement. He also argues that Anne Marie DeSivo's mother is willing to testify that Anne Marie DeSivo told her that she was the driver of the black Chevy Blazer, which was pursued by police and eventually left abandoned on a snow bank. During trial, the prosecution argued that the defendant, who owned the Blazer, was driving the SUV when the police pursued it.

Again, defendant fails to present the court with evidence supporting his claim. Finally, defendant argues that he has recently found out that Ann Marie DeSivo, who was his wife, had a criminal history, which the prosecution allegedly failed to disclose to the defendant. Once again, defendant does not offer any evidence to support his claim that his wife had a criminal history. Nevertheless, defendant argues that newly discovered evidence that calls into question his wife's testimony warrants a new trial.

Once again, defendant's arguments lack merit. First, although defendant says he has evidence to support his arguments concerning Anne Marie DeSivo's testimony and criminal history, he has not presented any of it to the court, which seriously undermines the existence of said newly discovered evidence. Second, even if he did have such evidence and it was newly discovered, such evidence would again act merely as impeachment evidence, which as we have noted is not enough to warrant a new trial. For these reasons, defendant's arguments for new trial based on evidence concerning Anne Marie DeSivo's testimony are rejected.

### G.  *Danielle Worthington*

Defendant argues that he has evidence that shows Danielle Worthington testified for the government in exchange for a lower sentence for her uncle, John Worthington. To support this argument, defendant attaches a news article that

discusses John Worthington's trial, which includes below the article an unsigned handwritten note that states "this is the article about her testifying against you to get a lighter sentence." (New Trial Brief, exhibit H, Rec. Doc. No. 249-9, p. 2). Defendant argues this news article and unsigned statement is enough evidence to warrant a new trial.

Defendant's alleged new evidence does not support his argument. First, the news article gives no indication whatsoever that Danielle Worthington gave her testimony in exchange for a lower sentence for her uncle. The article merely demonstrates that a gentleman named John Worthington, who may or may not be related to Danielle Worthington, pled guilty to a conspiracy to manufacture methamphetamine. Second, the handwritten note under the article lacks credibility because not only do we not know who wrote the statement, but defendant has not offered any evidence to establish the underlying basis for what the statement suggests - that Danielle Worthington did in fact testify against DeSivo in exchange for a lower sentence for John Worthington. An unsigned statement suggesting that she did, and nothing more, is not enough evidence to support DeSivo's claim, and therefore the alleged newly discovered evidence is not material to the issues involved. Furthermore, even if the evidence was material, it would amount again to nothing more than mere impeachment evidence. For these reasons, defendant's

evidence concerning Danielle Worthington's testimony fails to meet Rule 33's third and fourth requirements regarding newly discovered evidence.

Finally, we find that every piece of newly discovered evidence offered by the defendant - either individually or cumulatively - would fail to result in a probable acquittal and therefore defendant's motion fails to meet Rule 33's fifth requirement related to motion for new trial based on newly discovered evidence. Defendant's trial lasted over a week and a half, with more than a dozen witnesses testifying against the defendant. Even discounting all the evidence and testimony defendant argues should be discounted, there still would be overwhelming evidence from the testimony of the other witnesses to support defendant's conviction. Defendant has had his day in court, and a jury of his peers found him guilty of four counts related to a conspiracy to manufacture and distribute methamphetamine, possession of a firearm, witness tampering, and obstruction of justice. We find that none of defendant's newly discovered evidence would change this result. Therefore, we deny defendant's motion for a new trial based on newly discovered evidence, and we will continue with defendant's sentencing as scheduled.

                                                                                  s/ James F. McClure, Jr.
                                                                                 James F. McClure, Jr.
                                                                                 United States District Judge