IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | 4:04-CR-00010 |
| | : | 4:09-CV-02236 |
| CHRISTOPHER P. DESIVO, | : | |
| | : | (Judge McClure) |
| Defendant | : | |

**M E M O R A N D U M**

May 28, 2010

## I. BACKGROUND

On December 16, 2002, a grand jury returned a six-count superseding

indictment against defendant Christopher P. DeSivo. In this indictment, DeSivo

was charged with conspiring to manufacture, possessing with the intent to

distribute, and distributing methamphetamine under 21 U.S.C. § 846 ("Count

One"); possession with intent to distribute and distribution of methamphetamine

under 21 U.S.C. § 841(a)(1) ("Count Two"); possession of a firearm by a

convicted felon under 18 U.S.C. § 922(g)(1) ("Count Three"); two counts of

witness tampering under 18 U.S.C. § 1512(b)(1) ("Count Four" and "Count

Five"); and obstruction of justice under 18 U.S.C. § 1512(c)(2) ("Count Six").

After a jury trial, DeSivo, was found guilty of Counts One, Three, Four, and

Six. On January 24, 2007, DeSivo was sentenced to 360 months imprisonment.

The United States Court of Appeals for the Third Circuit, on or about August 7, 2008, affirmed DeSivo's conviction and sentence. The United States Supreme Court denied DeSivo's petition for a writ of certiorari on or about December 8, 2008.

## II. PROCEDURAL HISTORY

On December 2, 2009, Christopher P. DeSivo, proceeding pro se, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, as well as a brief in support. (Rec. Doc. Nos. 280 and 282). DeSivo included with his motion a number of exhibits which are labeled Attachments 1 through 6 on the docket sheet. (Rec. Doc. No. 281). DeSivo appears to use these attachments as support for the nine grounds in his motion alleging ineffective assistance of counsel. These nine grounds as alleged by DeSivo are more properly categorized as six grounds for the ineffective assistance of counsel: (1) DeSivo's counsel's failure to contest the authenticity of a videotape and recorded calls made in prison; (2) the failure of counsel to call Mark Worthington as a witness for the defense; (3) the failure on the part of DeSivo's counsel to offer evidence relating to ownership of an assault rifle; (4) trial and appellate counsels' failure to properly challenge laboratory results and witness testimony relating to the production of methamphetamine; (5) the combination of all of counsels' errors, which amounted

to an unfair trial because, in essence, no defense was presented by counsel; and (6) failure on the part of DeSivo's counsel to challenge testimony that related to DeSivo's fleeing from the police.  (Rec. Doc. No. 289 at 9-10).

DeSivo filed a brief in support of his motion on December 3, 2009 (Rec. Doc. No. 282), and the government filed an opposition brief on March 18, 2010 (Rec. Doc. No. 289).  DeSivo filed a reply brief on April 12, 2010.  (Rec. Doc. No. 293).  DeSivo also has filed a motion for discovery and a brief in support (Rec. Doc. Nos. 294 and 295), as well as a motion for the appointment of counsel (Rec. Doc. No. 296).[1]  The government filed an answer to DeSivo's petition on April 19, 2010.  (Rec. Doc. No. 297).[2]

---

[1] By an order dated December 17, 2009, this court denied, without prejudice to their reconsideration at a later date upon a review of a motion to vacate, previous motions for discovery and the appointment of counsel filed by DeSivo. (Rec. Doc. Nos. 283 and 284).  This court further advised DeSivo that a motion for discovery, pursuant to Middle District Local Rule 7.5, requires a supporting brief. DeSivo has complied with this requirement.  (See Rec. Doc. No. 295).

[2] On April 28, 2010, DeSivo filed an objection to what he describes as the government's amended second answer to his § 2255 motion.  (Rec. Doc. No. 298). DeSivo claims that the government, with this answer, "attempts to modify its first brief" and that "[t]o allow the government to file a second answer after examining movant's reply would be extremely prejudicial."  Id. at 2.  DeSivo specifically asks that this court remove or deny the government's answer and allow no additional amendments by the government.  Id. at 3.  We fail to see how DeSivo has been prejudiced by the government's filing of its answer, which was a requirement contained in this court's December 17, 2009 Order (Rec. Doc. No. 285).  In addition, we fail to see how this document in any way amends the

DeSivo also filed, on April 28, 2010, a motion seeking leave to file a document purporting to be an affidavit of James Rosh apparently related to Grounds Eight and Nine of his § 2255 motion. (Rec. Doc. No. 299). As the government had had no opportunity to respond to this affidavit, we ordered, pursuant to Rule 7(c) of the Rules Governing Section 2255 Proceedings for United States District Courts, as amended effective December 1, 2004, the government to respond stating whether it admitted or denied the document's correctness by May 26, 2010. (Rec. Doc. No. 300). The government filed a response on May 25, 2010. (Rec. Doc. No. 301).[3]

As the instant matters are ripe for disposition, we will now deny DeSivo's motion to vacate, set aside, or correct his sentence. (Rec. Doc. No. 277). We also

government's theories put forward in its opposition brief filed on March 18, 2010 (Rec. Doc. No. 289). As such, we will deny the relief as requested.

[3] By way of this affidavit, DeSivo appears to assert his innocence by raising new evidence which purports to impeach Ann Marie DeSivo's testimony at trial concerning Count Three of the indictment. (Rec. Doc. No. 299 at 2-3). In addition, the affidavit refers to an incident concerning a Chevrolet Blazer, alleged instances in which Ann Marie stole from DeSivo and his mother, and alleged instances when Ann Marie purchased or attempted to purchase guns for at least Rosh. Id. We agree with the government that substantial evidence other than Anne Marie's testimony was offered at trial concerning Count Three, and the other issues raised in Rosh's affidavit do not affect "the likelihood of conviction." (Rec. Doc. No. 301 at 1-3). Therefore, while we will grant DeSivo's motion seeking leave to file the Rosh affidavit, the affidavit fails to add anything to the claims DeSivo alleges in his § 2255 motion.

will deny his motion for discovery (Rec. Doc. No. 294) and his motion for the appointment of counsel (Rec. Doc. No. 296).

## III. STANDARD OF REVIEW

The seminal case used to determine whether trial counsel was ineffective is Strickland v. Washington.  466 U.S. 668 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  Id.  Strickland establishes a two-part test.  Id.  A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant."[4]  Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).

Judicial scrutiny of counsel's performance must be highly deferential. Strickland, 466 U.S. at 689.  It is all too tempting for a defendant to second-guess

---

[4] Under the second part of the Strickland test, the question is whether the defendant was deprived of receiving a fair trial.  See United States v. Brown, 991 F.2d 1162, 1168 (3d Cir. 1993) (citing Strickland, 466 U.S. at 687).  To make out such a deprivation, DeSivo must establish the existence of "a reasonable probability -- one sufficient to undermine [the court's] confidence in the outcome -- that the jury's verdict would have been different if not for counsel's errors." United States v. Gray, 878 F.2d 702, 712 (3d Cir. Pa. 1989) (citing Strickland, 466 U.S. at 695).

counsel's assistance after conviction or an adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Id. A court must make every effort to avoid the distorting effect of hindsight and evaluate the conduct from counsel's perspective at that time. Id. There is a strong presumption that counsel's conduct was reasonable. Id.; see also Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (noting that "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance") (internal quotations omitted).

## IV. DISCUSSION

In light of the following analysis, we conclude that DeSivo has failed to show under Strickland that his attorneys' representation "fell below an objective standard of reasonableness" or that he was prejudiced by any ineffectiveness on the part of his attorneys. Flores-Ortega, 528 U.S. at 478. We also will deny DeSivo's motion for discovery and motion for the appointment of counsel.

## 1. Ineffective Assistance of Counsel Claims

### A. Introduction of Videotape Evidence and Recorded Telephone Calls (Ground One)

First, DeSivo contends that his attorney improperly failed to object to the

authenticity of tapes, both audio and video in nature, offered by the United States.

DeSivo alleges that these tapes were altered. More specifically, DeSivo alleges

that his trial counsel, Scott Gardner, Esq., "allowed edited copies of recorded

conversations and edited altered video tape [sic] to be submitted as evidence

without review or authentication." (Rec. Doc. No. 280 at 5). DeSivo contends

that the removed portions "effectively concealed perjury" committed by the

government's witnesses and that counsel's failure to investigate before trial or

prevent the introduction of the tape recordings "proves [counsel's]

ineffectiveness." Id. Second, DeSivo alleges that his trial counsel "also failed to

review the recordings we did obtain and use them for impeachment." Id.

In response, the government first contends that the tapes admitted were in

fact fully authenticated and that the calls were not altered but were instead moved

onto a composite tape by Trooper Hutson. (Rec. Doc. No. 289 at 15). In light of

the proper authentication made by Trooper Hutson, the government contends that

there would have been no basis for DeSivo's trial counsel to object to the

admissibility of this evidence. Id. at 16. In addition, even if the evidence should

have been suppressed, the government argues that "there is still no reason to

believe DeSivo suffered any prejudice by their introduction." Id.

According to Fed. R. Evid. 901(a), a tape recording such as that at issue will

7

be properly authenticated or identified so as to be admissible "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, the tape recordings were properly authenticated and there is no evidence that the tapes were altered, only that the phone conversations were transferred from a CD as obtained from the prison to a cassette tape, which was a format more easily accessible to court staff. Trial Tr. Vol. 5, 35-40. We first conclude that a failure by counsel to object to the introduction of such evidence was not error. See United States v. Muzychka, 725 F.2d 1061, 1069 (3d Cir. 1984) (noting that the "recordings which the government proposed to offer in this case were authenticated" and that "[t]here is no evidence that they were altered so as to give a misleading account of the recorded conversations"). In any event, there is no evidence that DeSivo was in any way prejudiced by the introduction of such evidence, in light of the other evidence, testimony and otherwise, offered against DeSivo. Trial Tr. Vol. 4, 31-33, 43:16; see also Trial Tr. Vol. 5, 14-21.

Second, we find that DeSivo's other allegations under Ground One concerning the admissibility of an allegedly altered videotape offered by the government are similarly unavailing. There is no support for this allegation and, again, no evidence that DeSivo was prejudiced either in the leadership enhancement he received at sentencing (Rec. Doc. No. 247 at 27-28) or for the

charges of witness tampering and obstruction for which he was convicted. Therefore, we will deny DeSivo's 2255 motion as to these allegations.

Third, we agree with the government that DeSivo has failed to make out a claim based upon his counsel's alleged failure to introduce and play a full-length copy of the audio tapes that is unedited. As the government rightly points out, counsel may make a reasonable determination as to the best manner in which to impeach a witness. See Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993) (noting that "[t]he decision to *interview* potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case") (citing Wilkins v. Iowa, 957 F.2d 537, 540 (8th Cir. 1992)). Here, it appears as though Attorney Gardner had significant reasons for not introducing the tape and believed that he could properly impeach Ms. DeSivo through cross-examination.

In light of the above, we will deny DeSivo's § 2255 motion as to Ground One.

**B. Compelling the Testimony of Mark Worthington (Ground Two)**

Second, DeSivo posits that Attorney Gardner's failure to compel Mark Worthington to testify as a defense witness is actionable as an ineffective assistance of counsel claim. (Rec. Doc. No. 280 at 6). DeSivo argues that Mr.

Worthington, by his testimony, would have rebutted two government witnesses: Ricky Johnson and Danielle Worthington, Mark Worthington's daughter.  Id.

The government responds by noting that DeSivo concedes that his trial counsel did not fail to investigate the testimony that Mr. Worthington was likely to provide; in fact, DeSivo indicates in his brief that "counsel before trial hired a private investigator who interviewed defense witnesses, including Mark Worthington."  (Rec. Doc. No. 280 at 21).  In addition, the government points out that it made strategic sense for the defense not to call Mr. Worthington as a witness, as Mr. Worthington might further incriminate DeSivo and as defense counsel was able to cross examine Ricky Johnson and Danielle Worthington concerning their knowledge of DeSivo's use of methamphetamine.  Id. at 18-19.  The government also argues that, even if it were unreasonable for defense counsel not to have called Mr. Worthington as a witness, DeSivo would be unable to establish prejudice incurred as a result of that decision.  Id. at 19.

We agree with the government that DeSivo has failed to make out a claim of ineffective assistance of counsel based on the failure to call Mr. Worthington as a witness.  As the Supreme Court held in Strickland, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation

are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  As such, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  <u>Id.</u> at 691.  Here, it appears as though defense counsel believed, and was reasonable in so believing, that the risks of calling Mr. Worthington as a witness outweighed the benefits; in fact, instead of calling Mr. Worthington as a witness to impeach witnesses Ricky Johnson and Danielle Worthington, defense counsel was able to impeach these witnesses, to a certain extent, on cross-examination.  <u>See</u> Trial Tr. Vol. 3, 14-26 (cross-examination of Ricky Lee Johnson); Trial Tr. Vol. 6, 40-42 (cross-examination of Danielle Worthington).

However, even if it were unreasonable for defense counsel to fail to call Mr. Worthington as a witness, we do not see how DeSivo was prejudiced by this failure.  Although Mr. Worthington's testimony would have been offered merely for impeachment purposes, defense counsel was able to impeach Danielle Worthington and Ricky Johnson on cross-examination.  <u>See</u> Trial Tr. Vol. 3, 14-26; Trial Tr. Vol. 6, 40-42.  During this cross-examination, each admitted that they in fact had not personally seen DeSivo handle methamphetamine or any of its ingredients.  <u>See</u> Trial Tr. Vol. 3, 18-19; Trial Tr. Vol. 6, 40-41.  In addition, more

than a dozen witnesses testified as to DeSivo's making and distributing methamphetamine.

In light of the above, we will deny DeSivo's § 2255 motion as to Ground Two.

### C.  Challenging Laboratory Results and Witness Testimony Concerning the Production of Methamphetamine (Grounds Three, Four, Five, and Six)

Next, DeSivo takes issue with the way in which his trial and appellate counsel handled the matter of challenging laboratory results and witness testimony relating to the production of methamphetamine.  In Ground Three of his motion, DeSivo argues that Attorney Gardner failed to seek the appointment of a forensic chemist who would be able "to perform independant [sic] testing and refute the false testimony as to the manufacture and yeild [sic] of methamphetamine from fired amounts of precursors."  (Rec. Doc. No. 280 at 8).  In Ground Four, DeSivo contends that his appellate counsel, William Miele, Esquire, was ineffective. Although Attorney Miele did file "a motion for a chemist to assist in arguing the weight of drugs" concerning the sentencing of DeSivo, that motion was denied by the court and Attorney Miele "failed to raise the denial on appeal."  Id. at 9.

In Ground Five, DeSivo claims that his trial counsel failed to file a motion seeking "to suppress or object to the introduction of lab reports and drug evidence from New York State Police . . . ."  (Rec. Doc. No. 280 at 10).  DeSivo claims that

this evidence should have been suppressed or at least objected to by his counsel because the packaging, substance, weight, and color of the evidence had changed. In Ground Six, DeSivo claims that his counsel failed to seek to suppress or object to evidence from Pennsylvania in the form of drug and laboratory evidence. Id. at 11. DeSivo claims that this evidence contained an incorrect name and lab identification number, as well as additional evidence that was not originally listed in the "search inventory." Id.

In response, the government first notes that the drugs found in a Chevrolet Blazer on February 8, 2003, pertained only to Count Two of the superseding indictment; to this extent, then, DeSivo can claim no prejudice as to the failure to challenge the introduction of this evidence, as he was acquitted on Count Two. Second, the government contends that, to the extent that DeSivo's ineffective assistance of counsel claims rest on a failure by counsel to challenge the admissibility of laboratory reports and documents concerning substances obtained later, on February 11 and 12, 2003, no prejudice can be shown. Third, it is the position of the government that counsel's failure in obtaining a forensic expert provides no support for DeSivo's ineffective assistance of counsel claim, in light

of the fact that Count One is merely a conspiracy charge[5] and that there is no

indication that DeSivo was prejudiced by the failure to obtain such an expert.[6]

Fourth, the government rebuts DeSivo's claim that his appellate counsel

inappropriately failed to appeal this court's denial of his motion for a forensic

chemical expert, arguing that the issue of whether Smith and DeSivo could have

produced four ounces of methamphetamine out of one thousand cold pills

containing ephedrine was rendered moot in light of this court's January 9, 2007

Memorandum and Order in which this court sentenced DeSivo assuming that

Smith was only capable of producing one ounce of methamphetamine out of one

thousand pills.  (Rec. Doc. No. 247 at 11 n.6) (in which this court indicated that,

because of our finding that Smith and Desivo were able to yield only one ounce of

methamphetamine per thousand pills, DeSivo's request for a chemical expert was

---

[5] As noted by the Third Circuit, "[t]he essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: '(1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal.'"  United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008) (quoting United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006)).

[6] As noted by the government, more than a dozen witnesses testified at trial as to the intent to produce, and actual production of, methamphetamine and that DeSivo in fact made over 1,000 grams of methamphetamine.  (Rec. Doc. No. 289 at 22-23).  In addition, even assuming the conclusion by a forensic expert that Freeman Smith produced no ounces of methamphetamine with DeSivo, DeSivo still would have qualified as a base offense level of 32 for sentencing purposes. Id. at 23.  Therefore, there is no evidence that DeSivo has been prejudiced.

rendered moot).

We agree with the government that DeSivo's ineffective assistance of counsel claim based on Grounds Three, Four, Five, and Six should be dismissed. As noted by the government, DeSivo has failed to allege, at a minimum, how he has been prejudiced, assuming <u>arguendo</u> that his counsel should have raised the issues of a forensic expert or challenged the introduction of particular types of evidence, at trial or on appeal. As such, we will deny DeSivo's § 2255 motion as to Grounds Three, Four, Five and Six.

### D. Counsel's Failure to Investigate or Offer Evidence Concerning the Ownership of the Assault Rifle (Ground Eight)

In Ground Eight, DeSivo contends that his counsel did not "investigate the registered ownership of the 9MM Rifle movant was accused of possessing." (Rec. Doc. No. 280 at 14). DeSivo claims prejudice because, he argues, "[b]ringing in the real owner would of [sic] destroyed The [sic] key witness's story of movant sending her to a Flea Market to purchase the gun for him." <u>Id</u>. In addition, DeSivo claims that the government violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); DeSivo contends that "[i]t is very probable that the government ran the check [of who was registered as the owner of the nine-millimeter rifle] and [the check] produced evidence favorable to the defense and chose not to turn it over to the defense." (Rec. Doc. No. 282 at 45).

In response, the government points out that the question of who owned the gun is neither necessary nor sufficient in determining the question of possession. First, the government argues that, "[b]ecause ownership is not an element of the crime, and lack of ownership is not a defense, DeSivo cannot establish that counsel's conduct was either unreasonable or prejudicial under Strickland." (Rec. Doc. No. 289 at 29). Second, the government argues that assuming arguendo that a reasonable attorney under the circumstances would have conducted a search into who owned the rifle at issue, "the trial transcript establishes that DeSivo's trial counsel did in fact conduct such an investigation." Id. at 30. Third, the government argues that DeSivo's allegation that the government violated the dictates of Brady by failing to disclose information concerning the individual to whom the gun was registered must fail, as DeSivo did not raise such an allegation on direct appeal and as he cannot credibly assert that he is innocent or show cause and prejudice. Id. at 27.

DeSivo was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g). It is a violation of § 922(g)(1) for a person, "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or

16

transported in interstate or foreign commerce."  In this way, possession, not ownership, is the key question.  See United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999) (indicating that "constructive possession requires an individual to have the power and intent to exercise both dominion and control over the object he or she is charged with possessing") (citing United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1996)).  As the Third Circuit has explained, to show constructive possession the government is required to:

> submit sufficient evidence to support an inference that the individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence."

United States v. Borbon, 2009 U.S. Dist. LEXIS 109086, at *7 (M.D. Pa. Nov. 23, 2009) (Conner, J.) (quoting United States v. Introcaso, 506 F.3d 260, 270 (3d Cir. 2007).  As the Ninth Circuit has held, "[o]wnership may be circumstantial evidence of possession, but it cannot amount to, or substitute for, possession. Possession, actual or constructive, is what the government must prove."  United States v. Casterline, 103 F.3d 76, 78 (9th Cir. 1996).

We conclude that DeSivo has failed to make out a claim under § 2255 based upon his counsel's conduct as it relates to DeSivo's conviction under § 922(g)(1). First, nothing DeSivo points to in his motion or brief can establish that his trial

counsel's conduct was deficient under either prong under <u>Strickland</u>.  Second,

DeSivo has failed to raise the <u>Brady</u> issue on direct appeal; therefore, this claim is

subject to procedural default, as DeSivo cannot show his actual innocence, or

cause that excuses the default and actual prejudice that would result from the error.

<u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 162-68 (1982).

In light of the above, we will  deny DeSivo's § 2255 motion as to Ground

Eight.

### E.  Introduction of Testimony Relating to DeSivo's Flight from the Police (Ground Nine)

In Ground Nine, DeSivo argues that his trial counsel did not review material

obtained during discovery and improperly "allowed False Identification Testimony

about movant to go unchallenged . . . ."  (Rec. Doc. No. 280 at 15).[7]  More

specifically, DeSivo argues that defense counsel should have prevented evidence

of his alleged flight from the Chevrolet Blazer on February 8, 2003, from being

---

[7] As the government notes, to the extent that this claim for ineffective assistance of counsel is based upon Count Two of the superseding indictment, a count for which DeSivo was acquitted, such relief is barred.  Simply put, DeSivo could not have been prejudiced by any such error, as he was acquitted on the count.  <u>See</u> <u>Yarbrough v. Klopotoski</u>, 2009 U.S. Dist. LEXIS 121330 (E.D. Pa. Oct. 30, 2009) (noting that "petitioner was not prejudiced by the admission of the statements of Ms. Huch and Ms. Duran to Officer Roach because petitioner was acquitted of all charges relating to the robbery of Ms. Huch and Ms. Duran").  As such, the remaining count of relevance, Count One, will be analyzed.

admitted.  DeSivo claims that the individual fleeing the vehicle could not have

been him, as he cannot flee because of a prior medical condition.  (Rec. Doc. No.

282 at 46-47).

The government argues in response that DeSivo has failed to point to any

evidence as to which trial counsel did not conduct an otherwise thorough

investigation and, even if such an investigation had not been conducted, there is

no evidence of prejudice to DeSivo.

Once again, we agree with the government that DeSivo simply has not made

out a claim for ineffective assistance of counsel.  As the Third Circuit has noted,

"the Sixth Amendment does not require perfection . . . ."  Jacobs v. Horn, 395 F.3d

92, 120 (3d Cir. 2005).  Even so, here, by DeSivo's own admission, DeSivo's trial

counsel conducted a significant investigation into DeSivo's alleged flight.  DeSivo

indicates that his counsel "had copies of medical records that would of [sic]

supported the defense that movant is disabled and could not have ran [sic] from

the Blazer."  (Rec. Doc. No. 282 at 46).  DeSivo also mentions that counsel had

medical records and other statements that would have supported his contention

that he could not run because of a spinal injury; it is DeSivo's contention that

counsel refused to review this material "and failed to present it at trial."  Id.  We

conclude that DeSivo's claim that his counsel refused to review the evidence at

issue or present the evidence at trial, with nothing more, cannot overcome the deference afforded to the performance of counsel.  See Strickland, 466 U.S. at 689.  In addition, assuming arguendo that counsel did not review the evidence, we cannot conclude that DeSivo suffered prejudice as a result.  Counsel engaged in an assertive cross-examination, as well as recross-examination, of Deputy Spallone, in which counsel sought to discredit the identification made of DeSivo.  See Trial Tr. Vol. 1, 54-71, 74-78.   Any additional cross-examination made by counsel as to DeSivo's spinal injury and his ability to "flee" would have been, at best, minimally helpful.

In light of the above, we will deny Desivo's § 2255 motion as to Ground Nine.

### F.  The Combination of Errors Committed by Counsel Amounts to a Fundamentally Unfair Trial (Ground Seven)

In his seventh ground for his claim of ineffective assistance of counsel, DeSivo argues that "[a]ll of the errors" committed by counsel "amount to a fundamentally unfair trial" and that "[c]ounsel presented no defense."  (Rec. Doc. No. 280 at 13).

The government, in response, notes that, "[b]ecause DeSivo is unable to establish the existence of even a single error, let alone the multiple errors required for relief, his claim must fail."  (Rec. Doc. No. 289 at 10, n.1).  Even if DeSivo

were to make out a number of errors made by defense counsel, the government

contends that "the overwhelming unchallenged evidence introduced at trial

eliminates any reasonable possibility that the outcome would have been any

different." Id.

We agree with the government. Because we have found no area in which

DeSivo has established a single error committed by defense counsel, DeSivo

simply cannot make out a claim of ineffective assistance of counsel based upon a

cumulative effect of all errors committed at trial. See Fahy v. Horn, 516 F.3d 169,

205 (3d Cir. 2008) ("Individual errors that do not entitle a petitioner to relief may

do so when combined, if cumulatively the prejudice resulting from them

undermined the fundamental fairness of his trial and denied him his constitutional

right to due process.") (citing Albrecht v. Horn, 471 F.3d 435, 468 (3d Cir. 2006)).

Even if defense counsel had committed a number of errors, the evidence weighing

in favor of DeSivo's guilt would be dispositive. See id. (concluding that, even if

the court "were to combine all of the prosecutor's allegedly improper remarks with

the admission of [the defendant's] detailed confession, there is still weighty

evidence of [the defendant's] guilt in the record").

In light of the above, we will deny DeSivo's § 2255 motion as to Ground

Seven.

**2. Motion for the Appointment of Counsel**

Appointment of counsel is discretionary with the court. 18 U.S.C. § 3006A(a)(2)(B). Counsel must be appointed for an indigent federal habeas petitioner only when required by the interests of justice or due process. Schultz v. Wainwright, 701 F.2d 900 (11th Circuit 1983). In Tabron v. Grace, the Third Circuit announced the factors that are to be considered by a district court in deciding whether to exercise its discretion and seek counsel for an indigent litigant in a civil case. 6 F.3d 147, 153 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994). Although the court in Tabron applied 28 U.S.C. §1915(e)(1), district courts have held that the factors set forth under Tabron are equally applicable to 18 U.S.C. § 3006A(a)(2). See Kotey v. Gonzalez, 2007 U.S. Dist. LEXIS 21654, at *2-4 (D.N.J. 2007) (Linares, J); Santos v. Diguglielmo, 2007 U.S. Dist. LEXIS 14813, at *2-5 (M.D. Pa. 2007) (Mannion, M.J.); George v. Pa. A.G., 2007 U.S. Dist. LEXIS 90895, at *2-3 (M.D. Pa. 2007) (Caputo, J.).

Under Tabron, the first consideration by a district court should be whether the [petitioner's] claim has "some merit in fact and law." Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing Tabron, 6 F.3d at 157). Only after determining that the claim has some merit should the court consider these six additional factors: (1) the [petitioner's] ability to present his or her own case; (2) the complexity of the

legal issues; (3) the degree to which factual investigation will be necessary and the petitioner's ability to pursue such an investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the [petitioner] can attain and afford counsel on his own behalf.  Id. at 457-58 (citing Tabron, 6 F.3d at 155-56, 157 n. 5).

We conclude that neither the interests of justice nor due process require the appointment of counsel.  In his lengthy motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence and memorandum of law in support, DeSivo has set forth a number of claims for ineffective assistance of counsel.  Upon review of this motion and memorandum of law, we have concluded that these claims lack merit.  In addition, the legal issues involved are not complex and, in his motion and briefing, DeSivo has shown that he has the ability to present his own case.

Therefore, at this time, we will deny DeSivo's  motion to appoint counsel. (Rec. Doc. No. 296).

### 3.  Motion for Discovery

In light of our conclusion that DeSivo's motion to vacate set aside, or correct sentence under 28 U.S.C. § 2255 (Rec. Doc. No. 280) should be denied, we will similarly deny DeSivo's motion for discovery (Rec. Doc. No. 294) as moot.

## V. CONCLUSION

In light of the above reasoning, we will deny DeSivo's § 2255 motion (Rec. Doc. No. 280), as he has failed to show under <u>Strickland</u> that his attorney's representation "fell below an objective standard of reasonableness" or that he was prejudiced by any ineffectiveness on the part of his attorney.  <u>Flores-Ortega</u>, 528 U.S. at 478.  In addition, we will deny DeSivo's motion to appoint counsel (Rec. Doc. No. 296), motion for discovery (Rec. Doc. No. 294), and objection to the government's answer as filed (Rec. Doc. No. 298).  We will grant DeSivo's motion seeking leave to file a supplemental affidavit (Rec. Doc. No. 299).


<u>s/James F.  McClure, Jr.</u>
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
    :
          v.         :         4:04-CR-00010
    :         4:09-CV-02236
CHRISTOPHER P. DeSIVO,     :
    :         (Judge McClure)
        Defendant     :

**ORDER**

May 28, 2010

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.     DeSivo's motion filed pursuant to 28 U.S.C. § 2255 (Rec. Doc. No.

        280) is **DENIED**.

2.     DeSivo's motion to appoint counsel (Rec. Doc. No. 296) is **DENIED**.

3.     DeSivo's motion for discovery (Rec. Doc. No. 294) is **DENIED AS**

        **MOOT**.

4.     DeSivo's objection (Rec. Doc. No. 298) to the Government's answer

        as filed is **DENIED**.

5.      DeSivo's motion seeking leave to file a supplemental affidavit (Rec.

        Doc. No. 299) is **GRANTED**, and the affidavit is accepted as attached

        to the motion.

6.      The clerk is directed to close the file.

                                        s/James F.  McClure, Jr.
                                        James F. McClure, Jr.
                                        United States District Judge